[Civ. No. 1113. Third Appellate District.—August 16, 1913.]

KATIE N. STEPHENS et al., Appellants, v. THE LE-MOORE CANAL & IRRIGATION COMPANY, Defendant and Respondent; EMMA E. McKENNA, Executrix of the Last Will of Richard E. McKenna, Deceased, Intervener and Respondent.

Corporation—Sale of Stock for Delinquent Assessments—Compliance With Statute.—In this action to set aside the sale of corporate stock for delinquent assessments, the evidence is sufficient to sustain findings that the assessments and sale were regular under sections 334–339 of the Civil Code.

ID.—NOTICE OF ASSESSMENTS—SUFFICIENCY.—If notices of the assessments were mailed to the plaintiff as directed by statute, it is presumed that they were received; and if her coplaintiff, her husband acting for her, had personal notice of the assessments and their delinquency, notice to him was notice to her, and she cannot be heard to complain of defects in the publication.

ID.—SALE FOR DELINQUENT ASSESSMENTS—LIMITATION OF ACTIONS TO SET ASIDE—PRESUMPTION.—It will not be presumed that an action to set aside a sale of corporate stock for delinquent assessments was commenced within six months after the sale, as required by section 347 of the Civil Code, if it does not appear when the original complaint was filed, and an amended complaint was not filed until eighteen months after the sale.

ID.—SETTING ASIDE SALE—TENDER TO CORPORATION.—Where it is sought to set aside a sale of corporate stock for delinquent assessments, a tender of the amount of the assessments to the corporation, rather than to the purchaser, is ineffectual.

ID.—AGREEMENT BY PURCHASER TO HOLD STOCK FOR BENEFIT OF CORPORATION—EVIDENCE.—In this action to set aside a sale of corporate stock for delinquent assessments, the evidence is sufficient to support findings that the stock was purchased by a director in his own right, and not for the benefit of the corporation under an agreement to make a transfer to it or hold the shares in trust for it.

ID.—PRESUMPTION THAT DIRECTOR ACTS FOR CORPORATION IN MAKING PURCHASE.—The fact that the purchaser of corporate stock at a sale thereof for delinquent assessments is a director of the corporation, gives rise to no presumption that he is acting for the company in making the purchase.

ID.—VALIDITY OF AGREEMENT BY PURCHASER TO HOLD STOCK FOR BENEFIT OF CORPORATION.—A promise by a director, who purchased corporate stock at a sale thereof for delinquent assessments, to transfer the stock to the corporation or hold the shares for its benefit, is without consideration, and involves a violation of law, and is therefore void.

ID.—DEFENSES UNAVAILABLE AGAINST PURCHASER OF STOCK.—Excuses which might have been made to the corporation for not paying assessments for which the stock was sold, do not affect the rights of a purchaser of the stock at the sale.

APPEAL from a judgment of the Superior Court of Kings County and from an order refusing a new trial. John G. Covert, Judge.

The facts are stated in the opinion of the court.

Miles Wallace, and E. T. Cosper, for Appellants.

Houghton & Houghton, for Defendant and Respondent.

M. L. Short, and H. Scott Jacobs, for Intervener and Respondent.

CHIPMAN, P. J.—The action was commenced to set aside the sale of a half share of the capital stock of defendant company which before the sale belonged to and stood in the name of plaintiff, Katie N. Stephens. It is alleged in the amended complaint that an assessment was levied upon the stock of the company; that said plaintiff failed to pay the assessment; that it was sold to one R. E. McKenna, but it is alleged that the sale was invalid and sold for certain alleged irregularities. Defendant company answered denying that the sale was irregular and claimed that it was regularly made and that said McKenna bid in the said half share; that at the time he was a director of the company and purchased the stock in his own name for the benefit of the company, agreeably to an understanding with the company at the time he made the purchase. that at any time the company should so desire the said McKenna would transfer said stock to it upon payment of all assessments paid by him, and that meanwhile he would hold the stock in trust for the company; that said McKenna died before the commencement of the action leaving a last will by which Emma E. McKenna was appointed executrix, and is now acting as such. The said Emma E. McKenna, as said executrix, at a later stage in the case, filed a complaint in intervention, setting forth the proceedings at the sale of said stock and alleging that her husband, R. E. McKenna, purchased the same at the said delinquent sale for his own purpose and in his own right, and not for or in the interest of the company. The defendant company answered the complaint in intervention, setting up the same facts alleged in its answer to the amended complaint; also alleged that it had filed a claim with the executrix of McKenna's estate, claiming said stock and offering to pay to said executrix the amount paid by deceased at the purchase of said stock, and all subsequent amounts paid by him or by her on assessments thereof, which said claim was

rejected. At the trial, judgment passed in favor of the intervener.

It should be further stated that the complaint in intervention alleged that since the purchase of the stock by McKenna, six assessments were levied upon the capital stock of the corporation, and that he or his executrix paid these assessments; and that said executrix regularly caused notice to creditors to be published in said estate.

Defendant's answer to the complaint in intervention does not allege an election to take the stock in McKenna's lifetime, nor that any tender was made to him of assessments paid by him. Its averments and the evidence were that after his death and after his executrix had paid assessments it, for the first time, expressed a willingness to treat the sale as for its benefit. Its claim was presented February 22, 1909. McKenna died July 20, 1908, and, on August 11, 1908, letters were duly issued to intervener. Notices of assessments Nos. 18 and 19 were served upon her and paid by her before any claim was made by defendant upon her for said stock.

Plaintiffs' alleged third cause of action (their second cause of action was abandoned) is directed more particularly against defendant company in effect to explain and excuse their failure to tender payment in time, but not questioning the regularity of the assessment or sale. In their answer to the intervention, however, they deny the regularity of the assessment, and deny that R. E. McKenna was the purchaser in his own right, alleging that he acted for and on behalf of defendant company. Plaintiffs did not plead a presentation of a claim to the executrix of the estate of McKenna, nor did they make proof of any such presentation, nor did they tender or offer to tender to intervener the money paid by her and her testator on account of said assessments, although the books of the corporation showed that the stock had been delivered to McKenna in his lifetime.

There are two appeals—the present one, No. 1113, by plaintiffs, and the other, No. 1125, by defendant company, and both from the judgment and the order denying the motion of each for a new trial. There does not seem to be any substantial difference between the two transcripts. The pleadings, findings, and judgment are the same in both. In the present case the testimony of the witnesses is more in narrative form than

in 1125, in which latter the questions and answers appear more frequently. We observe an occasional omission of some document from one which appears in the other, but for all practical purposes either record sufficiently presents the issues and questions involved.

Findings numbered fifth, sixth, seventh, eighth, and sixteenth recite the proceedings of defendant in ordering or levy-ing the assessment and of the secretary in publishing notices, making the sale and necessary entries in the books thereafter, and they also find that the one-half share of defendant's stock was sold to R. E. McKenna for his own use and not to defendant through him. These findings go to the issues presented by plaintiffs and are challenged as unsupported by the evidence. They hold that the proceedings taken by defendant in reference to the assessment No. 13, levied on January 24, 1907, were regular and valid. Plaintiff's contention is that they were invalid and void for the following reasons: 1. That no order of delinquency was ever made by defendant as required by section 337 of the Civil Code; 2. That no place of sale of delinquent stock was designated in the notice of delinquency published and given as required by sections 339 and 341 of said code; 3. That no order was ever made by defendant directing the publication of the order levying the assessment, nor of the delinquent list, and that no newspaper was designated in which such publications should be made; and 4. That no notice of the assessment or delinquency was ever published as required by section 336 of said code, in the counties where the works of defendants were situated,—namely the counties of Fresno and Kings.

The minutes of the board of directors contained the following entry: "At a regular monthly meeting of the board of directors of the Lemoore Canal & Irrigation Company held in Lemoore on the 24th day of November, 1906," (the secretary of the company testified that that was a regular monthly meeting of the company at which there was a majority of the board in attendance) "moved by Dr. Tolhurst and seconded by M. A. Heinlein that assessment (No. 13) of $100.00 per share be levied upon the capital stock, of the Lemoore Canal & Irrigation Company, payable immediately to the secretary at the office of said company in Lemoore, California; said assessment to become delinquent on the 2nd day of January, 1907, and

advertised for sale at public auction and if not sooner paid to the Lemoore Canal & Irrigation Company, to be sold on the 24th day of January, 1907, at the hour of four o'clock P. M. of said day, to pay the delinquent assessment thereon, together with the costs of advertising and expenses of sale. Motion carried." The secretary caused the following notice to be published in the Lemoore *Leader,* a newspaper of general circulation in Kings County, the principal place of business of defendant company, and the place where the works were in part situated:

"Assessment Notice.

"Office of Lemoore Canal & Irrigation Company. Principal place of business Lemoore, Kings County, California.

"Notice is hereby given that at a meeting of the board of directors of the above company held in Lemoore on the 24th day of November, 1906, an assessment (No. 13) of one hundred dollars ($100) per share was levied upon the capital stock of the corporation, payable immediately to the secretary of said company at the company's office in Lemoore, in said county.

"Any stock upon which this assessment shall remain unpaid on the 2nd day of January, 1907, will be delinquent and advertised for sale at public auction, and unless payment is made before, will be sold on the 24th day of January, 1907, at 4 o'clock P. M. to pay delinquent assessment, together with the costs of advertising and expenses of sale.

Stiles McLaughlin,

"Secretary Lemoore Canal & Irrigation Co."

This notice was so published for five successive weeks, to wit: December 1st, 8th, 15th, 22nd, and 29th, 1906. A "Delinquent Notice" was also published in said newspaper, stating the names of persons whose assessments were delinquent and the amount of the delinquency, " . . . Katie N. Stephens, No. of Certificate 105, No of Shares ½, amount $50.00 . . . ," and stating that "in accordance with law and in (the) order of the board of directors made on the 26th day of November, 1906, so much of the said stock as may be necessary will be sold on the 24th day of January, 1907, at 4 o'clock P. M. of said day, to pay the delinquent assessments thereon, together with the costs of advertising and expenses of sale. Stiles McLaughlin, secretary Lemoore Canal & Irrigation Company."

This notice was published in said newspaper in each issue thereof for three weeks, to wit: January 5th, 12th and 19th, 1907. The secretary of the company testified that he mailed a copy of the notice of assessment to plaintiff, Katie N. Stephens, about a week or ten days after the assessment was ordered, by depositing it in the post-office, postage paid, and addressed to her place of residence at Hanford, Kings County. It is not denied that such notice was received by her. He also testified that he informed plaintiff, C. A. Stephens, who was acting for and was the agent of his wife, of the delinquency and was told by him that he would attend to the matter. He did, in fact, send by mail his check for the amount and costs, $50.50, but it was not received until the morning after the one-half share of Mrs. Stephens had been sold to McKenna.

It was alleged in the amended complaint that the principal place of business of defendant was in Kings County, and that its works were in that county and in Fresno County. As to the works in Fresno County the evidence was that "the point of diversion of defendant's canal and a small portion of its main canal were in Fresno County at that time and a small portion of its ditches and one lateral." The remaining works were in Kings County.

The order levying the assessment seems to contain all the elements pointed out as necessary by section 334 of the Civil Code. Section 335 requires the secretary to cause to be published a notice of the order and directs what it shall contain. A comparison of the published notice of assessment with section 335 will show an almost literal compliance therewith, except that the place of sale of delinquent stock is not specifically mentioned. Section 336 requires either personal service of this notice or service by mail, both of which was made. It requires the publication to be made for four successive weeks in a newspaper of general circulation, published at the principal place of business of the corporation, "and also in some newspaper published in the county in which the works of the corporation are situated, if a paper be published therein." These provisions were complied with except that no publication was made in Fresno County, as far as appears. Section 337 gives directions as to the publication of the delinquent notice and its form "substantially." Section 338 states what it must specify, and section 339 directs how it is to be published.

The notice was published in the newspaper which published the notice of assessment and is in substantial compliance with the statute. Whether or not a failure in all cases to publish notice of the assessment and delinquency in every county where some part of the corporation's works may happen to be would vitiate the sale, is a question not expressly answered by the code provisions. We do not feel called upon to decide the question. Notices were sent to Mrs. Stephens as directed by the statute and presumably were received as there is no denial of their receipt. Besides, her coplaintiff was acting for her and had personal notice of the assessment and its delinquency, and made an ineffectual effort to pay the same, and notice to him was notice to her. The publication, so far as she was concerned, had served its purpose, and she cannot be heard to complain. In this connection respondent, intervener, makes the point that the action was not commenced within six months after the sale, and cannot be maintained, citing section 347 of the Civil Code. This section provides, among other things, that no action for the recovery of stock "must be sustained unless the same is commenced by the filing of a complaint and the issuing of a summons thereon within six months after such sale was made." The amended complaint was filed July 10, 1908, and the sale of the stock was made January 24, 1907. It does not appear when the original complaint was filed, and we may not assume that it was filed in time to satisfy the statute, especially as the amended complaint was filed so long after the sale and plaintiffs made no effort to show when the original complaint was filed. Respondent cites *Burnham* v. *San Francisco Fuse Mfg. Co.*, 76 Cal. 26, [17 Pac. 939.] This is an instructive case, showing that a stockholder may not enjoin a sale where the assessment was regular and valid, but the order of sale was irregular. It was held to be the stockholder's duty to pay the assessment or offer to do so and that failing herein equity would not enjoin the sale. In the present case the sale was made to McKenna a year and a half before the amended complaint was filed and before any tender was made and if the assessment and sale were regular and his purchase was for his personal benefit and not for the corporation, it seems to us the tender to the corporation was ineffectual, for plaintiffs knew that the sale had been made to McKenna. It may be that section 347 should be treated as a statute of limitations and, as

it was not pleaded, must be deemed to have been waived and that in that view intervener's point is not available to her. It may be answered that as against an estate the statute of limitations cannot be waived. (Code Civ. Proc., sec. 1499.) In our opinion it is not necessary to decide the question.

The crux of the case lies in the question—Is there sufficient evidence to support the finding of the court that the assessment and sale were regular and that McKenna at his death was the owner and holder of the stock or, otherwise stated, does the evidence support the finding that he purchased the stock for himself and not for the benefit of defendant, the assessment and sale being regular? We think there is evidence sufficient to support the findings.

The averment of the amended complaint is that at said sale of said stock said defendant did "attempt and pretend to sell to itself" said stock "through one R. E. McKenna, who was then and there a member of the board of directors of defendant." A similar averment is made in answer to the complaint in intervention. The averment of defendant in its answer is "that said defendant is informed and believes, and therefore alleges, at the time said Richard E. McKenna so bid in the said one-half share of said capital stock at said delinquent sale, it was understood and agreed by and between the said defendant . . ., and its board of directors, and the said Richard E. McKenna, that should no bidder offer at said sale . . . the said Richard E. McKenna should bid in said one-half share of said capital stock at said sale for and on behalf of and for the benefit and interest of defendant, and should hold the same for the benefit of defendant, and that defendant would refund to said Richard E. McKenna any and all sums of money advanced or paid by" him and that he would hold the said one-half share in trust for defendant and would upon demand by defendant and upon payment by it of all sums advanced by him, "transfer and surrender to defendant as *cestui que trust* any and all rights held by him in said one-half share of capital stock as the trustee of said defendant." The court found specifically that these averments were not true; "but on the contrary any understanding or agreement had or made between said Richard E. McKenna and said defendant, or its board of directors, was had and made subsequent to the sale of said one-half share of capital

stock on the 24th day of January, 1907, and was without consideration and was contrary to law and void.'' And the court further found ''that said Richard E. McKenna was the highest and best bidder at said sale, and that thereupon said stock was sold to him, paid for by him and that thereafter the certificate for said one-half share of said capital stock was duly and regularly issued by the officers of said Lemoore Canal and Irrigation Company to said Richard E. McKenna, deceased,'' was delivered to him and that he never assigned or transferred the same, and up to the time of his death he was the owner and holder thereof.

There is no evidence of any agreement or understanding between McKenna and the defendant entered into prior to or at the time of the sale of the stock to him, such as is alleged by defendants and plaintiffs, or of any agreement of any kind. The evidence as to McKenna's relations to the sale is found in the testimony of the secretary of the company, witness McLaughlin. He testified to the circumstances attending the sale, that he offered the stock ''and asked who would pay for the least fraction of the stock . . . and called for a bid and Mr. McKenna bid that he would pay the assessment and costs for the stock. There was no other bid and it was knocked off to him. He said, 'I will give $50.50 for the ½ share.' '' He testified that before leaving the office he made the following entry ''in the minute book in reference to the sale, the stock journal or ledger'': ''January 24, 1907, the hour for the sale of delinquent stock having arrived, the following stock was sold: The one-half share of Katie N. Stephens was sold to R. E. McKenna for $50.50, amount of delinquent assessment and costs.'' The witness testified that he ''canceled the entry of that stock in Mrs. Stephen's name in the stock journal or ledger'' from which he read the following entry: ''February 26, 1907. Lemoore Canal & Irrigation Company: No. of Certificate, thirteen; Number of Shares, one-half; In whose Name, R. E. McKenna; Number of Certificate, two hundred and sixteen; Number of Shares, one-half.''

On January 26, 1907, assessment No. 14 was levied. The witness testified that McKenna was present at this meeting. The witness was asked to state what was said at that meeting about the purchase of the Stephens stock. ''A. I don't remember the words I used; I just told them of the sale of the

stock and the matter was discussed there. As to what the discussion was in the presence of Mr. McKenna and what I said about the person to whom the stock was sold, I don't remember just what was said; I know that they talked it over and Mr. McKenna was there and they were talking the matter over before the board; I informed them that the stock had been sold to Mr. McKenna for the company. Q. Do you remember any thing that Mr. McKenna said at that time and place concerning that transaction? A. I don't recollect just what was said.'' He testified that the certificate remained in his office until about two weeks before McKenna ceased to be a director which was on April 11, 1908. He was asked why he turned over to McKenna the stock certificate number 216 and answered: ''Mr. McKenna came into the office and asked for the certificate. It was in his name and I took it out and gave it to him. That is all there was to it.'' This was the certificate that had been written February 26, 1907. Witness Heinlein, a director of the company, testified as to what McKenna said at the meeting January 26, 1907: ''I remember the conversation. He said he was willing to turn over the stock to the company any time when the company had paid what he had paid on it. He said he bought the stock on the 24th day of January, 1907, for the company.'' He also testified that he made a similar statement at the meeting of the board of directors in April, 1908—''that if the company would pay the amount of the assessments he would turn it (the stock) over to the company.'' There is no evidence that the company accepted McKenna's offer or took any action in the matter until after his death. The evidence is that there was no understanding or agreement that he should purchase the stock for the defendant. There were six assessments levied while this stock was outstanding in McKenna's name, four of which were levied in his lifetime and two after his death. They were paid by him or his executrix. He represented these shares as owner and voted them at meetings as owner. The conduct of the company is inconsistent with any claim of ownership by it.

It is not disputed that McKenna had a right to purchase the stock for himself. That he was at the time a director of defendant company gives rise to no presumption that he was acting for the company in making the purchase. The statute

directs that if there be no bidders the corporation may bid in the stock in which case "an entry of the transfer of the stock *to the corporation* must be made on the books thereof. While the stock remains the property of the corporation it is not assessable." (Civ. Code, sec. 343.) "Whenever any portion of the capital stock of a corporation is held by the corporation by purchase, a majority of the remaining shares is a majority of the stock for all purposes of election or voting on any question at a stockholders' meeting"; (Civ. Code, sec. 344) that is, stock held by the corporation may not be voted.

We think there was ample evidence to justify the findings of the court. What McKenna said to the directors after he had made the purchase, if it may be said to have been a promise, was without consideration, involved a violation of the statute and should be held void, as the trial court held, as against public policy as expressed in the statute. "As a general rule all contracts or agreements which involve or have for their object a violation of the law are illegal." (15 Am. & Eng. Ency. of Law, 2d ed., p. 935; *McCullough* v. *Board of Education,* 51 Cal. 418; Civ. Code, sec. 1667.) Nor can the position of plaintiffs and defendant, that it was a trust, be maintained. "A trust may be created for any purpose for which a contract may lawfully be made, except as otherwise prescribed by the titles on uses and trusts and on transfers"; (Civ. Code, sec. 2220) or it may be created by acceptance of the trust, or acknowledgment, "made upon sufficient consideration." (Civ. Code, sec. 2222.) Here there was no consideration, it was not in writing, it was a mere offer not accepted which, if carried out, would not have been for a purpose for which a contract may lawfully be made. To countenance such an agreement (which, in fairness to the directors we do not think was in fact concluded or originally intended to be carried out, since it involved a plain violation of law), would afford the means to the directors of a corporation by which they could control the affairs of the corporation by voting shares which the statute declares shall not be voted. "Where a contract belongs to a class which is reprobated by public policy, it will be declared illegal though in that particular instance no actual injury may have resulted to the public, as the test is the evil tendency of the contract and not its actual result." (15 Am. & Eng. Ency. of Law, p. 934.) We think,

all the facts and circumstances considered, that the directors did not acquiesce in McKenna's proposition, if he made it, and did not at any time, while he was living, contemplate dealing with this share otherwise than as his, and it was not until after his death, and for some unexplained reason, that they made any claim on the share for the corporation.

We do not think it necessary to consider plaintiff's third alleged cause of action. Whatever excuse they may make for not paying the assessment before the sale, which equity might enforce against the corporation, had it been the purchaser of the stock, it certainly cannot affect the rights of intervener as executrix of the last will of the owner of the stock. In this count of the amended complaint plaintiffs admit the regularity of the assessment and sale but seek to have a court of equity set it aside on the ground of excusable neglect.

Intervener makes the point that inasmuch as McKenna purchased the stock for himself and was its owner, the claim of plaintiffs must fail as to intervener, if for no other reason, because plaintiffs made no tender to her of the amount of assessments and costs, and hence have no standing in a court of equity. (Citing: Civ. Code, sec. 347; *Campbell* v. *Santa Maria etc. Co.,* 153 Cal. 282, [95 Pac. 39].) It is also urged that plaintiffs, having known of the sale and delivery of the stock to McKenna, should have presented a claim to the executrix, as required by statute, without which the action cannot be maintained.

The view we have taken of the case renders a decision on the point unnecessary. The purchase by McKenna having been made in good faith, it could not be defeated by plaintiffs' offering to pay the amount of the assessment to defendant the day after the sale. And McKenna's right to the certificate was not affected by the delay in delivering it to him.

The briefs make no mention of alleged errors in the rulings of the court during the course of the trial. Hence we do not notice them.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.