[Civ. No. 1884.    Third Appellate District.—October 8, 1918.]

MRS. M. E. NEWHALL, Respondent, v. I. B. HUNSAKER et al., Appellants.

CORPORATIONS — DELINQUENT ASSESSMENT — SALE OF STOCK — ACCEPTANCE OF PURCHASER'S NOTE—AVOIDING SALE—ACTION BY OWNER, TO RECOVER STOCK.—Under section 341 of the Civil Code a sale of corporate stock for a delinquent assessment, when the purchaser's promissory note is accepted in payment of the purchase price, instead of cash, is irregular and voidable at the instance of the delinquent owner, who may recover the stock by action as provided in section 347 of the Civil Code.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge.

The facts are stated in the opinion of the court.

E. I. Feemster, Middlecoff & Feemster, and Power & McFadzean, for Appellants.

G. W. Zartman and Lamberson, Burke & Lamberson, for Respondent.

BURNETT, J.—The action was brought under section 347 of the Civil Code to recover twenty-five shares of the Tulare County Power Company, which were sold for a delinquent assessment. The stock was sold for $225, and the corporation, instead of requiring that the assessment be paid in money, accepted the promissory note of the bidder for the amount of the bid. The assessment sale was made and the note received on the 27th of March, 1915, and the note was paid the following August. Plaintiff did not question the validity of the sale until September 15th, and she did not learn before that time of the manner in which the corporation had attempted to dispose of the stock. It is stated by appellants that there is only one question in the case, and that is, "Did the acceptance of the note by the corporation for the delinquent bid and the payment of the same before proceedings taken by plaintiff under section 347, Civil Code, make a valid sale of the stock to defendant Hunsaker?" Said section provides: "No action must be sustained to recover

stock sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect of the notice of sale, or *defect* or *irregularity in the sale,* unless the party seeking to maintain such action first pays or tenders to the corporation, or the party holding the stock sold, the sum for which the same was sold, together with all subsequent assessments which may have been paid thereon and interest on such sums from the time they were paid; and no such action must be sustained unless the same is commenced by the filing of a complaint and the issuing of a summons thereon within six months after such sale was made.''

As to this section, however, we may say that plaintiff made such tender and the complaint was filed and the summons issued within the six months therein provided. As to this there can be no doubt. The question is, therefore, not whether plaintiff has pursued the proper remedy, but, rather, whether there was such ''defect or irregularity in the sale'' as to make it voidable within said period at the instance of plaintiff. To determine that question we must consider the force and effect of section 341 of said code providing: ''On the day, at the place, and at the time appointed in the notice of sale, the secretary must, unless otherwise ordered by the directors, sell or cause to be sold at public auction, *to the highest bidder for cash,* so many shares of each parcel of the described stock as may be necessary to pay the assessment and charges thereon, according to the terms of sale.'' It is admitted that there was a violation of this provision of the statute, inasmuch as the stock was not sold for cash, but for a promissory note. If a violation of the statute in this important particular does not constitute a *defect,* or, at least, an *irregularity* in the sale it is difficult to conceive what would constitute such infirmity. Such section, we think, is plain enough. The bid must be upon a cash basis, and the purchaser must be ready and able to pay in money the amount of his offer at the time his bid is accepted. There is reason enough in the rule, but we need not discuss it. It should be sufficient for us to know that the legislature has so provided. If it had been intended that the note of the purchaser might be accepted for the bid, it is fair to assume that such contingency would not have been excluded. It is true that the corporation might lose nothing by the acceptance of the note, but it is not a question of the solvency of

the purchaser, but whether the sale has been conducted as the statute requires. The legislature has seen fit to provide that the sale shall be made for money and not for its equivalent or what may be converted into cash.

Nor is the rule the same as in the case of subscriptions for stock. In the latter case the law provides (Civ. Code, sec. 359) as follows: "No corporation shall issue stocks or bonds except for money paid, labor done or property actually received." A promissory note is property and, therefore, it is included within said provisions. This circumstance must be considered in viewing the cases cited by appellants. Besides, the case of *Pacific Trust Co.* v. *Dorsey,* 72 Cal. 55, [12 Pac. 49], and of *Quartz Glass & Mfg. Co.* v. *Joy,* 27 Cal. App. 523, [150 Pac. 648], upon which appellants rely, involved the validity of the notes given in payment for the stock. The contention was that the note in each instance was void as against public policy, but it was held that such construction "would sanction fraud and unfair dealing." It is not claimed here that the note given by Hunsaker was void, nor is it necessary to hold that the corporation could repudiate the transaction and treat the sale as a nullity. The proper position, as we view it, is, that in view of said section 341 of the code, the sale was irregular and, therefore, voidable at the instance of the delinquent owner of the stock if he proceeded as provided in said section 347.

Of course, the general principle as to the necessity for a strict compliance with the requirements of the statute in order to deprive the owner of his stock is recognized by the authorities.

In *Ruck* v. *Caledonia Silver M. Co.,* 6 Cal. App. 356, [92 Pac. 194], the validity of the assessment was involved, and it was held, that the courts have no power to dispense with any of the conditions that are provided by the legislature as precedent to forfeiture. Therein is quoted with approval the following declaration of Justice Sharwood in *Germantown Pass. R. Co.* v. *Fitler,* 60 Pa. St. 130, [100 Am. Dec. 546]: "We must look to the charter for the power of the directors to forfeit the stock. No doubt the power given must be strictly pursued and if any restrictions or limitations therein provided have been disregarded the alleged act of forfeiture must be declared invalid."

38 Cal. App.—26

In Cook on Corporations, volume 1, section 129, it is said: "The general method of forfeiting stock for nonpayment of calls is usually presented in detail by the statute authorizing forfeiture. In the earlier cases there may be observed some tendency to hold that a substantial, in distinction from a strict, compliance with the requirements of the statute is all that is necessary to a valid forfeiture. But in the later cases, English and American, it is plainly declared and may be taken as a settled rule that the validity of the forfeiture and sale of the stock of a subscriber in arrears depends upon a strict and formal compliance with the requirements of the enabling statute." The foregoing refers specifically to a forfeiture for the nonpayment of the subscription, but the same strictness should manifestly be required in the sale for a delinquent assessment.

In 10 Cyc. 502, it is said: "In respect of the mode of sale the governing statute must be strictly pursued."

However, as before indicated, it is not necessary to hold that the sale herein was void, but it is important to bear in mind that the situation is governed by the general rule of construction that prevails in cases of forfeiture.

Appellants also contend for the application of the doctrine of estoppel. The principle upon which they rely is stated in Thompson on Corporations (second edition, volume 4, section 3571), as follows: "The right of a stockholder to invoke the aid of equity in case of invalid or illegal forfeiture may be waived by acquiescence or delay, and, as in analogous cases, he must act promptly in order to obtain relief. The doctrine has been applied where stock was unlawfully forfeited and sold with the stockholder's knowledge, at a time when such stock was of little value, but afterward by some change of circumstances and the diligence of the other stockholders it became valuable, and the original holder then attempted to recover it by a suit in equity." Among the cases cited by said author are *Sayre* v. *Citizens' Gas Light etc. Co.,* 69 Cal. 207, [7 Pac. 437, 10 Pac. 408], and *Hayward* v. *National Bank,* 96 U. S. 611, [24 L. Ed. 855]. In the former it is said: "If he [the owner] had the right to repudiate the sale of stock upon the ground that it was not assessable or for any other cause, was it not incumbent upon him to act with diligence? Could he acquiesce in the sale of stock as long as the stock of the company was of but little value, but

when by the exertion of others, the consolidation of the company with a rival one imparted to the stock of the combined properties more value, come into a court of equity and claim an equivalent of the stock of the new company? We think not.''

In the Hayward case the supreme court of the United States declared: ''If Hayward was defrauded of his stock; if the title did not pass from him or the bank because of the peculiar relations which the purchaser held to him and the property; if he had the right originally upon any ground to repudiate the sale and reclaim the stock, it was incumbent upon him by every condition of fairness, to act with diligence, and before any material change in the circumstances and in the value of the stock had intervened.''

These authorities, however, are not in point for the reason that the legislature has prescribed the time within which a defective or irregular sale may be avoided. There is no more reason to deny effect to this than to any other statute of limitations. It confers a right or privilege upon the owner of the stock, and, it may be added, the purchaser at an irregular sale is presumed to take with knowledge of this right of the owner within six months to redeem his stock. There can be, therefore, nothing inequitable in the enforcement of the rule.

The purchaser knew that the defective or irregular sale was inoperative to confer an indefeasible title to the stock as against the owner, who might make tender of the assessment and bring suit for its recovery within the time prescribed in section 347. (*Burham* v. *San Francisco Fuse Mfg. Co.,* 76 Cal. 26, [17 Pac. 939].)

Moreover, it would seem that the purchaser was himself guilty of some degree of laches, as he did not pay the note until about five months after the sale. If the property had depreciated in value, would he have paid his note at all? We do not know, but, at any rate, it is not unfair to assume that he was unwilling to pay it until assured that he would suffer no loss. Again, there is no evidence in the record that the property when redeemed was of any greater value than what was repaid by the owner. There is some assertion to the contrary in the brief of appellants, but the evidence does not disclose it. All that the record shows is that there was quite a sum of money to be distributed to the stockholders, but it is silent as to the amount to be appropriated to each

share. Therefore, we may assume that appellant, Hunsaker, lost nothing by the redemption, and, not being damaged, he is in no position to invoke the doctrine of estoppel; and, of course, it is no concern of the Power Company whether plaintiff was entitled to redeem.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.