[Civ. No. 2137. Third Appellate District.—June 26, 1920.]

## BANK OF NAPA (a Corporation), Appellant, v. FERGUSON BURNS ESTATE, INC. (a Corporation), Respondent.

[1] CORPORATIONS—LIENS ON STOCK—PRIORITY OF—PLEDGE — OBLIGATION TO ADVANCE MONEY — EVIDENCE — FINDING. — In this action against a corporation to determine the ownership of certain stock in that corporation, the plaintiff having purchased the stock on execution sale, the defendant having caused the stock to be sold as a pledge following default by the stockholder in the payment of certain indebtedness to the corporation for which such stock was pledged, the evidence showed that notwithstanding the advances by the corporation for the payment of which the stock was pledged were not made until after the levy of the writ of execution, the corporation had, at the time of the creation of the pledge, which was prior to such levy, obligated itself to make such future advances; therefore, the trial court properly found that the lien created by the pledge of the stock to defendant was superior to the lien created by the levy of the writ of execution.

[2] ID.—VALIDITY OF ACTS—RECORD NOT ESSENTIAL.—A record of corporate acts and resolutions is not essential to their validity.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edgar C. Chapman, U'Ren & Beard, D. L. Beard and O. G. Hopkins for Appellant.

Devlin & Devlin for Respondent.

BURNETT, J.—The action was brought to recover judgment: (1) That plaintiff is the owner and entitled to the possession of 30,000 shares of the capital stock of the defendant corporation, standing on the books of said corporation, on the twenty-third day of June, 1915, in the name of Dorothy A. Lawson, formerly Dorothy A. Burns; (2) That defendant be ordered and directed to cancel the certificate for said 30,000 shares and to issue a new certificate therefor to this plaintiff; (3) That in the event said stock cannot be transferred on the books of the company, plaintiff have judgment against defendant for $30,000, the value of said shares of stock. Judgment was rendered in favor of defendant for costs and this appeal is prosecuted by plaintiff from said judgment.

It was alleged in the complaint that, on January 30, 1915, in an action pending in the superior court in and for the county of Sacramento, a judgment was recovered by plaintiff against Dorothy A. Lawson for the sum of $9,485.56; that, on June 21, 1915, an execution was issued out of said court directed to the sheriff of Sacramento County, who, on the 23d of June, levied said execution upon defendant corporation, garnishing all of the capital stock of said corporation owned by and standing on the books of said corporation in the name of Dorothy A. Lawson. Plaintiff alleged, on information and belief, that at the time of the levy of said execution Dorothy A. Lawson was the owner of 30,000 shares of the capital stock of said corporation, represented by stock certificate No. 2. It was then alleged that, on the 10th of November, 1915, the sheriff gave due notice of the sale of said stock at public auction on November 19, 1915, at which time said stock was sold to plaintiff for $3,000, which was the highest, best, and only bid therefor; that, in December, 1915, demand was made upon defendant to cancel said old certificate and to issue a new one to plaintiff for said 30,000 shares of stock, which defendant refused to do. The value of said stock was alleged to be $30,000.

The court found "(I) That, on the 23d of June, 1915, Dorothy A. Lawson was the owner of 30,000 shares of the capital stock of the defendant as evidenced by certificate No. 2, and had been such owner since the fourteenth day of November, 1914, and remained such owner until the

twenty-ninth day of October, 1915; that her ownership of said stock was subject to a pledge as hereinafter more particularly found, said stock having been pledged to the defendant on the fourteenth day of November, 1914.

"(II) That on the fourteenth day of November, 1914, the said Dorothy A. Lawson was the owner of an undivided one-fifth interest in certain real and personal property, some of the same belonging at that time to the estate of Ferguson Burns, deceased, and some to the estate of Mary Burns, deceased, the said Dorothy A. Lawson being an heir at law and devisee of both Ferguson Burns and Mary Burns, she being a daughter of them, they having been her parents, and at such time her interest in said properties was mortgaged to sundry persons for the purpose of securing the indebtedness owing by her to them, in the sum of $6,986,21, with interest thereon, as was agreed to be paid. That the co-owners of the said Dorothy A. Lawson at said time, who were likewise, heirs and devisees in the same character as aforesaid averred, were her four sisters, Charlotte M. Flood, Irene E. Cochran, Myrtle T. Caldwell, and Elinor Burns." That the interests of Irene E. Cochran and Myrtle T. Caldwell were likewise mortgaged to secure indebtedness owing by them to sundry persons. "That it became necessary, before the estate above referred to could be closed, that an additional sum of money be borrowed for the purpose of paying debts and claims against each of said decedents, as well as the expenses of administration, and, therefore, on or about the ninth day of November, 1914, it was agreed among the said five heirs at law and devisees that a corporation should be formed, to be known as Ferguson Burns Estate, Inc., to which corporation all of the respective interests of the said persons named be transferred, and that the said corporation in consideration of such transfer should borrow a sufficient sum of money to pay the existing claims against each of said decedents, as well as the expenses of administration remaining unpaid, and also the indebtedness of said Dorothy A. Lawson, Irene E. Cochran, and Myrtle T. Caldwell, and thereupon, thirty thousand shares of stock should be issued to each one of the incorporators," and that each of the last three named would then be indebted to said corporation for the sum of money owing by her and mort-

gaged upon her interest, and that she should pledge her stock to the corporation as security therefor; that said agreement was carried into effect and, in August, 1915, said corporation, having borrowed money, paid the indebtedness owing by each of said three persons; that, pursuant to said agreement, said Dorothy A. Lawson pledged her 30,000 shares of stock, represented by certificate No. 2, to the corporation to secure her indebtedness so paid off and discharged by the corporation. "The issuance of said stock to the said Dorothy A. Lawson and the pledge thereof to the said corporation, and the agreement to pay her said indebtedness, and the transfer of her interest in said estates to defendant was a simultaneous transaction, but the said Dorothy A. Lawson never had the possession or control of the said 30,000 shares of stock, or any part thereof, or said certificate No. 2, or any other certificate, and the same was never issued to her, except as herein found."

Finding III was that the capital stock of defendant consisted of 150,000 shares of the par value of one dollar each, all of which were issued on November 14, 1914.

"(IV) On the twentieth day of October, 1915, the said Dorothy A. Lawson was in default in the payment of her obligation to the said corporation, and on the twentieth day of October, 1915, the corporation served upon the said Dorothy A. Lawson, a demand for the performance of said obligation," which she refused and neglected to· pay, and on said twentieth day of October the defendant gave notice of the time and place of the sale of said 30,000 shares of stock, which was posted in three public places and personally served upon said Dorothy A. Lawson; that, on the twenty-ninth day of October, 1915, at the time and place named, said shares of stock were sold at public auction to Irene E. Cochran, Myrtle .T. Caldwell, and Elinor Burns for the sum of $7,067.71, "the same being the amount of the pledge indebtedness then owing from said Dorothy A. Lawson to the said corporation, and they being the highest and best bidders therefor," whereupon said certificate No. 2 was canceled and a new certificate, numbered six, was issued to the purchasers, who since said twenty-ninth day of October, 1915, have been the owners of said shares, and who immediately pledged the new certificate to the corporation to

secure the existing indebtedness of said three purchasers to the corporation.

In Finding V it was found that "plaintiff never has had, and does not now have, any right, title, interest, lien or claim therein of any kind whatsoever."

Finding VI: "That at the time of the levy of the writ of execution referred to in the complaint and at the time of the alleged sale under said writ, plaintiff knew that certificate No. 2 for 30,000 shares of stock was held by defendant corporation as a pledge and had knowledge of the sale of said stock by the corporation to Irene E. Cochran, Myrtle T. Caldwell, and Elinor Burns; that, on November 19, 1915, plaintiff knew that certificate No. 2 had been canceled and a new certificate issued in lieu thereof to the three parties last above named."

Finding VII: "That the said stock, or any stock, or the right, title and interest of Dorothy A. Lawson therein, was never levied upon or attached," as alleged in the complaint, "and no lien of any kind in favor of the said plaintiff, or in favor of the sheriff of the county of Sacramento, attached to the said, or any, shares of stock of Dorothy A. Lawson, or any of her right, title and interest in and to the same."

[1] As shown above, the court found that the attempted levy by appellant was ineffectual and invalid, but we may forego a consideration of that question since it is admitted in the opening brief that, if there was a pledge of said stock to said corporation, as found by the court, the judgment must be affirmed. Furthermore, it is conceded that the validity and sufficiency of the pledge must be determined by the answer to the question whether the promise by the corporation to pay the debts of Dorothy A. Lawson was absolute or conditional; in other words, whether it created an obligation or expressed a mere option. We may quote from appellant's brief as follows: "The question then arises, When did defendant's alleged pledge lien attach, on November 11, 1914, or on August 25, 1915, when the money was paid? If the former, it was a superior lien to plaintiff's. If the latter it was a lien subsequent to that of plaintiff. . . . The pledge must rest, if at all, upon the proposition that on November 11, 1914, the corporation entered into an obligatory contract with Dorothy to make future advances on

her behalf. . . . The understanding with Dorothy, as testified to by defendant's witnesses, was nothing more nor less than that the corporation would some time in the future, when it was able to make a loan and if it was able to make a loan, pay these debts of Dorothy. At no time between November 11, 1914, and August 25, 1915, was Dorothy in a position to compel defendant to pay her debts. In other words, she had nothing but a conditional understanding with defendant corporation, which they were not obliged to carry out unless they saw fit to do so. The agreement then between Dorothy and the corporation was merely an optional agreement for future advances.''

If it was a mere optional agreement, as claimed by appellant, then the conclusion would follow, of course, that it could not operate to defeat a valid lien created by the levy of an execution made before the option was exercised. The authorities upon this point are cited by appellant, but the legal principle is not controverted by respondent. The trouble is, though, that in the testimony of the two distinguished members of the bar, who were witnesses for defendant, is found support for the theory that the corporation, at the time of the creation of the pledge, obligated itself to make such future advances; and the finding, based upon such testimony, cannot and should not be set aside by this court. It may be admitted that certain expressions may be found therein, which, apart from the context, lend some color to appellant's contention, but a fair consideration of the whole of the testimony leads to the conviction that the deduction therefrom made in the court below is not irrational.

Herein we may call attention to a portion of the testimony of Mr. Butler. After detailing a proposed arrangement for an adjustment of the financial affairs of the two estates in which the incorporators were the devisees and legatees, and which scheme, after further consideration, was abandoned as impracticable, the witness said: ''The plan of operation was practically reversed. Instead of the corporation giving notes to those that had not borrowed upon their equities, and those that had borrowed, were to have their debts paid by the corporation, and were to reimburse—to make the corporation secure by giving the corporation notes for the

amounts and by pledging their stock. Dorothy Lawson was to give a note to the corporation . . . she was to give the corporation her note for $6,600; this amount was pledged by her stock for the amount. The other girls were to do likewise—one note for $3,000 and one for $2,300. That was the final plan. That was agreed to by everybody, and that was the plan that was ultimately carried out." He admitted afterward that he might be mistaken as to the note having been given by Dorothy Lawson, but he reiterated that "it was agreed that the corporation should pay off the personal indebtedness of Dorothy A. Lawson and she should give the corporation a note for the amount so paid or to be paid, as secured by her stock in the corporation," and, furthermore, in the redirect examination this appears: "Q. You remember when the deeds were accepted, that the corporation agreed to advance this money that the girls owed to the bank, as part of the consideration? A. Yes, absolutely, that was the understanding. Q. Don't you remember also that the stock was to be pledged to secure the repayment? A. Absolutely correct. Q. Don't you also remember the girls were clamoring for some ready money? A. I should say they were. Q. It was agreed that the corporation would try to borrow and give them a thousand dollars apiece? A. Yes, sir." In the recross-examination he also testified as follows: "Q. How long subsequent to the incorporation was the agreement, under which the corporation was to pay the indebtedness of Dorothy A. Lawson made—was that at the same time, or after the corporation was incorporated? A. I would not say how long afterward. It was practically a simultaneous act. Q. Mr. Devlin testified it was after the incorporation was carried out? A. Yes. Q. Incorporated November 10th and this occurred on the 11th? A. Yes, I think that is correct." From the foregoing it is a fair inference that the corporation assumed the obligation to pay said indebtedness in consideration of said conveyance of said pledge and of the promise on the part of Dorothy Lawson to reimburse the corporation. The only optional part of the corporation's engagement related to the sum of $1,000 that was needed for pressing necessities. Mr. Devlin, it may be added, testified positively to the pledging of the stock, and as to the action of the corporation. This

appears in his testimony: "Q. Was there any resolution of the corporation authorizing and empowering the corporation to pay those indebtednesses off and take this stock as security? A. There was an oral resolution—the minutes were not written up, too many lawyers in it, I guess. Q. Was there any resolution ever entered in the books or records of the corporation? A. No, never entered in the books. There was one passed that day. . . . Q. The point is that, there was no formal resolution ever passed? A. Yes, there was a formal resolution passed." He proceeded to explain why the minutes were not written up, but that is immaterial here. [2] It is to be regretted, of course, that a more formal memorial of the proceedings was not preserved, but a record of the corporate acts and resolutions is not essential to their validity. (*Citizens Securities Co.* v. *Hammel,* 14 Cal. App. 564, [112 Pac. 731]; *Boggs* v. *Lake-port A. P. Assn.,* 111 Cal. 354, [43 Pac. 1106].)

We have no reason to question the good faith of the parties to the transaction or the entire ingenuousness of said testimony; and, we think, it cannot be doubted that the court below was legally justified in finding that the pledge was made and that the corporation obligated itself to pay said indebtedness. Since the obligation was incurred before appellant's lien was perfected, the advances might be made thereafter and yet relate to the prior date of the agreement and thus be effective and take precedence over appellant's lien.

The judgment is affirmed.

Nicol, P. J., *pro tem.,* and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1920.

All the Justices concurred.