[Civ. No. 6878. First Appellate District, Division One.—October 17, 1929.]

F. H. BROWN et al., Appellants, v. ST. PAUL CONSOLI-DATED OIL COMPANY (a Corporation) et al., Respondents.

264

John W. Woten and Cosgrave & Barstow for Appellants.

Milton M. Dearing for Respondents.

GRAY, J., *pro tem.*—Plaintiffs, as stockholders of the defendant corporation, sought an adjudication that an assessment levied upon their stock and a subsequent sale of such stock for nonpayment of that assessment were void. The court found that the assessment was valid; that, while there were irregularities in the proceedings leading up to the sale, yet plaintiffs were not entitled to relief because of noncompliance with the provisions of section 347 of the

Civil Code, and that plaintiffs' laches barred their recovery. Upon this appeal from the judgment based on those findings, plaintiffs urge that certain findings are not only not supported by the evidence but are contrary thereto, and that other findings not only do not support the judgment but require a different judgment favorable to their prayer.

First, the court found that at a meeting of the board of directors, all being present, legally convened on July 16, 1925, "said Board . . . made an order levying an assessment on the subscribed capital stock of said St. Paul Consolidated Oil Company in the sum of ten cents (10c) a share, payable on or before the 17th day of August, 1925, to Louis Doerr, President of said corporation, at 94 South First Street, San Jose, California, and fixed August 17, 1925, as the date on which unpaid assessments would be delinquent, and September 3, 1925, as the date for the sale of delinquent stock." "The directors of any corporation . . . may . . . levy and collect assessments upon the subscribed capital stock thereof, in the manner and form and to the extent provided herein" (Civ. Code, sec. 331). "Every order levying an assessment must specify (1) the amount thereof; (2) when; (3) to whom and (4) where payable; (5) fix a day, . . . on which the unpaid assessments shall be delinquent . . . and (6) a day for the sale of delinquent stock . . . " (Civ. Code, sec. 334; the numerals have been inserted for clarity).

Appellants urge that the evidence clearly shows a failure of the directors to make an order containing all of six matters to be specified, and that, therefore, the above finding is unsupported and contrary to the evidence. The pertinent part of the resolution of July 16th (being the only one on that date bearing upon the matter) reads as follows: "President Doerr then called the directors attention to the previous directors meetings at which time the importance of making an assessment was gone into and at the meeting of June 29th, 1925, it was unanimously decided by a full board to make an assessment but discovering the importance of having a stockholders meeting and the possibility of a new board being elected, Acting President Doerr thought that it was advisable to defer said assessment until the views of the new board had been heard and upon hearing all the facts and viewing the situation as presented,

concurred with the previous board action in ordering the assessment be made on the same base as has been decided, viz.; 10c per share of all stock of record." Did the new board concur with the previous board action? Grammatically it would seem to mean that "Acting President Doerr thought that it was advisable to defer said assessment until the views of the new board . . . concurred with the previous board action. . . . " Thus construed it is an opinion of what was to be done in the future, not an act then done by the board. Even assuming that it is intended to show action by the board, yet, as an order levying an assessment, it contains only the amount of the assessment and is silent as to when, to whom and where the assessment was payable and the date of delinquency and sale.

Realizing the deficiencies in the resolution, respondents offered the testimony of the president and secretary as to what actually occurred at the meeting of July 16th, relative to the board's action in levying the assessment. Over appellants' objection, the court properly admitted this testimony. (*Lawrence* v. *Premier Indem. Assur. Co.*, 180 Cal. 688 [182 Pac. 431]; *Citizens' Securities Co.* v. *Hammel*, 14 Cal. App. 564 [112 Pac. 731, 732]; *Bank of Napa* v. *Ferguson Burns Estate*, 48 Cal. App. 319 [192 Pac. 66].)

All the testimony of Secretary Barnhisel, here material, after the elimination of unnecessary matter, but without changing the sense, is as follows: "Q. This resolution in the minutes of the directors' meeting of July 16 relative to the assessment is the only order authorizing the levying of the assessment? A. Yes. Q. Those minutes were prepared by you? A. Yes. Q. At the meeting of July 16, 1925, was the time when this assessment would become delinquent and the time of delinquency discussed? A. Yes. Q. Was there any discussion about who the assessment was to be paid to? A. Yes, Mr. Doerr. I showed them one of the forms I had drawn up and I was instructed to go ahead and proceed with the assessment. Q. According to the time of payment and delivery as set forth in these forms? A. Yes. They said 'We will approve what the other board did by authorizing you to go ahead and make the assessment and then Mr. Doerr told me to go ahead and do it.' Q. What was said regarding when the stock would be delinquent for this assessment and to whom the assess-

ment would be paid and when the sale would take place? Were those matters discussed? A. Yes. I had that form made and I says 'We will use that form.' Q. The form you referred to is this form of assessment notice introduced? A. Yes. Q. There was a general discussion. A. Among the directors. Q. As I understand it, no formal resolution, is that correct? A. Only that I was directed by the president to go ahead. Q. There wasn't any formal resolution, and the president instructed you to go ahead. A. Certainly.''

The gist of President Doerr's testimony, after the elimination of unessential words, is as follows: ''Q. What was said regarding this assessment? A. We debated the necessity for getting some money very quickly. Q. State what the discussion was regarding the assessment and why it was necessary. A. There was a discussion about that. Q. Did all the directors take part in the discussion? A. Yes. Q. Was there any discussion about the time when the assessment was to be levied and when it had to be paid and to whom and when it would be delinquent? A. Yes, all those things entered into the discussion. Q. State what happened about those matters. A. We asked Mr. Barnhisel if he could give us the date when this thing would become operative and when delinquent, which he did and furnished us with the dates; one of the board made a motion that we assess each member for each share of stock ten cents and gave Mr. Barnhisel authority to publish the same in a newspaper in the County of Fresno. Q. Can you fix what dates Mr. Barnhisel furnished? A. It was from the latter part of August until some time the middle of September. We figured out the time. Q. Was there any discussion about whom the assessment should be paid to? A. It was decided it should be made payable to me. Q. Was there any discussion about where the assessment would be paid? A. I couldn't say as to any discussion, although it seemed to be the consensus of opinion that it should be paid to me personally in San Jose.''

Viewed as favorably as possible in support of the finding, the secretary's testimony merely discloses that he furnished the board with a written notice of assessment, containing the matters missing from the resolution (i. e., when, to whom and where the assessment was payable, the date of

delinquency and the date of sale), and that the board discussed these matters. It utterly fails to show any agreement or action by a majority of the board relative thereto. He does state that the board instructed him to make the assessment but, obviously, it could not delegate to him its discretionary power to determine these matters. The president's testimony shows the same discussion as to the amount of the assessment with possibly a decision as to where and to whom the assessment was payable. It does not disclose any action fixing the dates of payment, delinquency and sale. The testimony of neither officer measures up to that held sufficient to establish the passage of a resolution, in *Bank of Napa* v. *Ferguson Burns Estate, supra,* but is more analogous to that held insufficient in *Citizens' Securities Co.* v. *Hammel, supra,* where the following language, here pertinent, was used: "It does appear, however, that after the seven members of the board had assembled, a conversation took place between four of the members during which 'it seemed the sense of the three or four talking about it was that the company (meaning plaintiff) should have the furniture as security for the rent' . . . We are of the opinion that some action in the nature of a resolution would be necessary in order to warrant an officer of the corporation in thus pledging corporate property. The resolution need not necessarily be spread upon the minutes, if actually passed, but a conversation simply between four members— the other three present not being shown to have participated therein, nor in fact to have been aware of such conversation—is far from showing any resolution or authority upon the part of the board."

Appellants' contention that the evidence does not support the finding is well taken. We are satisfied that the evidence discloses that no order, meeting the requirements of said section 334 was made and that therefore the assessment was not valid. (*Ruck* v. *Caledonia Silver Min. Co.,* 6 Cal. App. 356 [92 Pac. 194].)

Respondents pleaded, appellants admitted at the trial and the court found that appellants had not met the requirements of section 347 of the Civil Code. This section provides that "no action must be sustained to recover stock sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect of the notice of sale,

or defect or irregularity in the sale, unless the party seeking to maintain such action first pays or tenders to the corporation . . . the sum for which the same was sold . . . ; and no such action must be sustained unless the same is commenced . . . within six months after such sale was made.'' Respondents earnestly urge that the assessment was irregular only and that therefore this last finding compels affirmance of the judgment. The effect of the omission from the order levying the assessment of the matters required by said section 334 is well stated in the following excerpt from *Ruck* v. *Caledonia Silver Min. Co., supra,* at page 358:

''The above-quoted section states in positive terms what *must* be specified in the order levying the assessment. It is there stated that the order must specify where the assessment is payable. We look in vain for any such specification in the order. It states the assessment is payable to the secretary, but his residence, office or place of business is not mentioned. He may, for aught that appears, have been absent from the state. We cannot speculate as to whether or not the plaintiff could have been injured by the omission in the order. The proceedings by which the property of a stockholder is declared forfeited, without suit, or personal notice of any kind, must be strictly construed. All the conditions precedent to such forfeiture must exist. Courts have not the power to dispense with any one of such conditions. The legislature has said that the order must specify where the assessment is payable, and it is not for us to eliminate the provision for any reason which might appeal to us. It is said that the stockholder could easily have ascertained the business office of the secretary, or the place where the assessment was payable. If the order had omitted the amount of the assessment, or the person to whom it was payable, or any other matter required, it might with equal force be urged that the stockholder could have ascertained by inquiry the amount of the assessment, the person to whom it was payable, and any other omitted matter. Such construction would leave the law as to the validity of an assessment in a sea of uncertainty. No lawyer could advise his client as to whether or not an assessment is valid, because he could not by any possible means guess what omission the court would say was harmless. To require the order levy-

ing the assessment to comply with the statutes in its essentials is to leave the rule plain so that everyone may understand it. We do not mean that an assessment would be declared void if it did not literally follow the language of the code, but it must contain the substance of every requirement therein. It is the rule, well established by the authorities, that proceedings in regard to the levy of an assessment and the sale of the stock of a shareholder of a corporation for a delinquent assessment are *in invitum*. The right must come from the law or the charter, and can only be legally exercised in the manner provided by the law, or by the charter. The reason for a strict construction in such case is that the sale, if regular and founded upon a valid assessment, forfeits the stock, and equity has no power to relieve from such forfeiture.''

The court in *Cheney* v. *Canfield*, 158 Cal. 342 [32 L. R. A. (N. S.) 16, 111 Pac. 92], in holding that said section 347 does not apply to sale under a void assessment used the following pertinent language:

''It is insisted by appellant that the levy of this assessment was void for several reasons, but principally on the ground that the board of directors, he asserts, had no authority to levy it because the meeting at which they did so was neither a regular meeting of the board nor a special meeting regularly called.

''It is the settled law that an assessment can be legally levied upon the capital stock of a corporation by the board of directors only at a regular meeting of the board or at a special meeting thereof regularly called. (*Harding* v. *Vanderwater*, 40 Cal. 78; *Thompson* v. *Williams*, 76 Cal. 155 [9 Am. St. Rep. 187, 18 Pac. 153].)

''As all proceedings whereby an assessment is levied upon the stock of a corporation, and under which a forfeiture of the stock of the stockholders may be had are *in invitum*, it is elementary law that they must be strictly followed. The levy of such an assessment can only be accomplished legally by a strict compliance with the statutory provisions relative thereto, or with the provisions of the charter of the corporation upon the subject. (*Herbert Kraft Co. Bank* v. *Bank of Orland*, 133 Cal. 64 [65 Pac. 143]; *Ruck* v. *Caledonia Silver Mining Co.*, 6 Cal. App. 356 [92 Pac. 194].) . . .

"The court found that the plaintiff was guilty of laches in bringing his action and also that his right of action was barred by section 347 of the Civil Code and section 341 of the Code of Civil Procedure. Both these code sections referred to make the same provision, namely, that 'no action must be sustained to recover stock sold for delinquent assessment upon the ground of irregularity of the assessment . . . ' unless the tender of the amount for which the stock was sold at said time and unless such action is commenced within six months after the sale of the stock. The sale of the stock in question here was made December 20, 1904; this action was commenced January 4, 1906.

"The sections referred to only apply where there has been some irregularity in the assessment or irregularity or defect in the notice of the sale or the sale itself. The assessment in question here, as we have seen, was not merely an irregular assessment, it was absolutely void. (*Herbert Kraft Co. Bank* v. *Bank of Orland* [*supra*].) Hence these sections have no application."

The assessment being invalid, not merely irregular, appellants were not required to comply with the provisions of said section 347. (*Richman* v. *Bank of Perris,* 73 Cal. App. 321 [238 Pac. 754].)

Second, the court found "that . . . notice of assessment was not published in any newspaper but that notice of assessment was mailed in the form and manner required by law to each and all the stockholders . . . including plaintiffs. . . . " Section 335 of the Civil Code requires the secretary to publish a notice of assessment in the form therein specified. Appellants contend that this finding compels à judgment in their favor, because the failure to publish invalidated the sale. Respondents reply that this is a mere irregularity within the provisions of said section 347. Section 346 of the same code in providing that this failure to publish invalidates all proceedings for the collection of the assessment but not the assessment itself, and that, in such event, all notices shall be republished, clearly shows the legislative intent that this publication forms part of the proceedings for collection rather than for the creation of the assessment. The case of *Smith* v. *Gate City Oil Co.,* 160 Cal. 446 [117 Pac. 525], decides that a failure to publish notice of sale would invalidate a sale

on the date fixed in the resolution levying the assessment but not the assessment and a valid sale could be had, if a resolution fixing new dates of maturity, delinquency, and sale were passed and all proceedings subsequent to order levying the assessment were repeated. Inferentially the court must have considered the publication of the notice of assessment as part of the proceedings leading up to sale, or otherwise it would not have required a publication of a new notice. Also it is apparent that the court considered that any defect in one step in those proceedings required a repetition of the entire proceedings. In *Shannon* v. *Tooker*, 167 Cal. 484 [140 Pac. 10], the publication of notice of delinquency was defective and, after publication of a proper notice, but without a republication of the notice of assessment, a sale was made. It was held a stockholder to recover stock so sold must comply with said section 347. The court impliedly held that the failure to republish was a mere irregularity or defect in the sale. The mere fact that the publication there discussed was in the second set of proceedings would lead to no different conclusion than if the court were concerned with the original proceedings, because under *Smith* v. *Gate City Oil Co., supra,* each proceeding must be complete in itself. It is interesting to note, in view of the fact that appellants received the mailed notice that in *Stephens* v. *Lemoore Canal & Irr. Co.,* 22 Cal. App. 579 [135 Pac. 707], the court found it unnecessary to pass upon the sufficiency of the publication of the notice of assessment, when the evidence disclosed that the stockholder received the notice mailed to her. We are satisfied that the failure to publish was a defect or irregularity in the sale within the purview of said section 347.

Third, the court found that the secretary published on August 21 and 28, 1925, a notice of delinquency, stating that the sale would be on September 3, 1925, and that, on said last day, he sold plaintiffs' stock to the defendant corporation. No criticism is made as to the form of the notice and both parties admit that the first publication was not "at least fifteen days prior to the day of sale" as required by section 339 of the Civil Code. Appellants claim that this failure invalidated the sale and that this finding compels a reversal. Respondents claim that this failure is an irregularity or defect, specifically provided for in said sec-

tion 347 and that, because of appellants' noncompliance with this section, judgment was properly rendered against them. Were the corporation, as the moving party, seeking to collect the assessment by a personal judgment against the stockholder, this failure would be fatal (*San Bernardino Inv. Co. v. Merrill*, 108 Cal. 490 [41 Pac. 487]), but where, as here, the stockholder asks relief from the forfeiture because of this failure he must comply with this section, as a condition precedent to recovery. (*Burnham* v. *San Francisco Fuse Mfg. Co.*, 76 Cal. 26 [17 Pac. 939]; *Shannon* v. *Tooker, supra; American Well etc. Co.* v. *Blakemore*, 184 Cal. 343 [19 A. L. R. 1087, 193 Pac. 779].)

Lastly, the court found that the assessment was levied to pay the corporation's debts, that most of the stockholders paid their assessments, that the moneys so realized have been expended, that if the assessment is declared void and the corporation forced to pay its debts out of its assets, a substantial loss of investment would result, that as a result of the payment of the debts and a reorganization the net assets have considerably increased and that it would be unjust and inequitable to the other stockholders, who paid, to permit appellants to recover their stock without payment of their assessment. Appellants challenge respondents' claim that this finding requires affirmance of the judgment. This finding is no more than a statement of reasons which would serve as an argument for the enactment of said section 347 and does not state any facts warranting the application of any other principle of law than is stated in said section. At least the facts found do not curtail appellants' right to recover further than is already done by that section (*Newhall* v. *Hunsaker*, 38 Cal. App. 399 [176 Pac. 380]). In fact, as is well stated in *Glenn* v. *California Trona Co.*, 38 Cal. App. 601 [177 Pac. 178], the section is but declaratory of the maxim of equity—that he who seeks equity must do equity. In *Richman* v. *Bank of Perris, supra,* it was held that the fact that certain stockholders in good faith paid a void assessment and performed a public service in rehabilitating an insolvent bank will not justify the court in relaxing the safeguards placed by corporate by-laws upon the actions of directors. What has been heretofore said as to effect of noncompliance with sec-

tion 347 is here equally applicable and needs no further amplification.

Being satisfied that, under the evidence, the assessment is void and that section 347 of the Civil Code has no application where the assessment is void, the judgment is reversed.

Knight, Acting P. J., and Cashin, J., concurred.