[Civ. No. 5175.    First Appellate District, Division Two.—June 23, 1925.]

## FRED W. RICHMAN, Appellant, v. BANK OF PERRIS (a Corporation) et al., Respondents.

[1] CORPORATIONS—VOID ASSESSMENT—ACTION TO SET ASIDE SALE—STATUTE OF LIMITATIONS.—Neither section 347 of the Civil Code, relating to the limitation of actions to recover stock sold for delinquent assessments, nor subdivision 1 of section 341 of the Code of Civil Procedure, has any application to an action to set aside a purported sale and cancellation of corporate stock sold under a void assessment.

[2] ID.—SPECIAL MEETING OF DIRECTORS—ABSENCE OF REGULAR CALL—VOID ASSESSMENT.—Where a special meeting of the board of directors of a corporation is not regularly called, and one of the directors who had no notice of the meeting is absent, the board

---

2.  See 6 Cal. Jur. 1055.

is powerless to levy a legal assessment, and a purported assess-ment being void, no rights flow from proceedings thereunder.

[3] ID.—DEFICIENCY IN BANK CAPITAL—REQUIREMENT OF ASSESSMENT—NECESSITY FOR VALID DIRECTORS' MEETING.—Section 133 of the Bank Act (Act 652, Deering's Gen. Laws 1923, p. 153), re-quiring the directors of a bank to levy an assessment upon the stock to repair any deficiency in the capital which may be found by the bank superintendent, does not in any way change the requirements for a valid directors' meeting, neither does it au-thorize the administration of corporate affairs in any manner not prescribed in the corporate by-laws.

[4] ID.—INABILITY TO SECURE LEGAL MEETING—AUTHORITY OF BANK SUPERINTENDENT.—Where directors of a bank find themselves in a position where they cannot secure a legal meeting of the di-rectors to levy an assessment for the purpose of repairing a de-ficiency in the capital found by the bank superintendent, they should permit the superintendent of banks to exercise the au-thority conferred upon him by section 136 of the Bank Act to take possession of the bank and enforce the liability of the stockholders and not attempt to raise the funds by an assessment levied at a directors' meeting not legally called.

[5] ID.—VOID ASSESSMENT — PAYMENT IN GOOD FAITH — RELAXATION OF CORPORATE SAFEGUARDS.—The fact that certain persons, in good faith, paid the void assessment and performed a public service in rehabilitating an insolvent bank will not justify the court in relaxing the safeguards placed by corporate by-laws upon the actions of directors.

(1) 14 C. J., p. 650, n. 93.    (2) 14a C. J., p. 87, n. 11, p. 88, n. 18.    (3) 7 C. J., p. 492, n. 62.    (4) 7 C. J., p. 492, n. 62.    (7) 7 C. J., p. 492, n. 62.

APPEAL from a judgment of the Superior Court of Riv-erside County.   G. R. Freeman, Judge.   Reversed.

The facts are stated in the opinion of the court.

John E. Biby and Harry C. Biby for Appellant.

John L. Richardson, T. E. Parke and Anderson & An-derson for Respondents.

4.   See 4 Cal. Jur. 292.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against him in an action wherein the complaint presented the following facts:

The defendant bank is a corporation organized under the laws of the state of California. Its capital stock consists of 250 shares of the par value of one hundred dollars each. The number of directors of said corporation provided for in its articles of incorporation is three, and at all times mentioned in the complaint it has had a board of directors consisting of three members. On or about April 16, 1919, and prior to August 9, 1919, Joseph B. Moffere, Louis Vaiani and Louis Casaretto were the duly elected, qualified and acting directors of said bank. Moffere, on April 16, 1919, was the owner of 199 shares of the capital stock of the bank, represented by two certificates of stock issued in his own name, and also owned ten shares of stock which was represented by two other certificates for five shares each, issued in the names of Louis Casaretto and Louis Vaiani, so that these persons might act as directors of said bank. During April, 1919, defendants W. W. Stewart, W. G. Stewart and Clifford R. Stewart learned that said bank was insolvent and made efforts to reorganize said bank, and, in connection with this purpose, consulted with Charles F. Stern, Superintendent of Banks of the state of California, and said Superintendent of Banks requested the bank to repair its capital in the amount of $40,000. During all the times mentioned it was provided in the by-laws of the bank that special meetings of the board of directors might be called by the president on one day's notice to each director, either personally or by wire, and that special meetings might be called in like manner and on like notice on the written request of two directors.

On May 26, 1919, directors Vaiani and Casaretto signed the following instrument in writing:

"Los Angeles, May 26, 1919.

"Mr. James B. Moffere,

"President of the Bank of Perris,

"Huntley Apartments, Los Angeles, Calif.

"Dear Sir:

"The undersigned, being a majority of the Board of Directors of the Bank of Perris, hereby request a special meet-

ing of said board, to be called and held in the Bank of
Perris at one o'clock in the afternoon of Tuesday, the 27th
day of May, 1919.

"LOUIS VAIANI,<br>
"LOUIS CASARETTO."

Said directors caused said instrument to be delivered to the
Huntley Apartments, in Los Angeles, and the proprietor of
said apartments signed the following instrument:

"Los Angeles, Cal., May 26, 1919.

"This is to certify that Mr. James B. Moffere, formerly a
tenant of the Huntley Apartments, 1207 West Third street,
Los Angeles, was not here present (nor has he been for
over thirty days, his present whereabouts being unknown
here) to receive a letter personally delivered by messenger,
said letter being a call to the meeting of the Directors of
the Bank of Perris, addressed to James B. Moffere, Hunt-
ley Apartments, and signed by Louis Vaiani and Louis
Casaretto, as Directors.

"HUNTLEY APARTMENTS,<br>
"By E. BLALACK."

The defendants W. W. Stewart, W. G. Stewart and Clif-
ford R. Stewart knew that said Moffere was a director of
said bank and that he could not be found for the purpose
of securing his attendance at a meeting of the directors of
said bank. Moffere, president of the bank, did not at any
time make a call for the holding of a special meeting of the
board of directors of the bank; but on the twenty-seventh
day of May, 1919, the said Vaiani and Casaretto, as di-
rectors of said bank, met at the banking-room in said bank
and assumed to act as the board of directors of said bank and
caused to be entered upon the minutes of the proceedings of
the board of directors a resolution purporting to levy an
assessment of $160 a share upon each share of the capital
stock of the defendant, which then amounted to 259 shares,
payable on June 26, 1919, to Louis Vaiani, the secretary
and cashier of said bank, and in and by said resolution, and
as a part thereof, the said two directors directed that any
stock upon which said purported assessment should remain
unpaid on the last-mentioned date would be delinquent and
advertised for sale at public auction and would be sold to
pay the delinquent assessment, together with costs of ad-
vertising and expenses of sale, or would be sold at private

sale and without such public notice. During the month of
May, 1919, the defendants W. W. Stewart, M. P. Mapes
and J. F. Hooks offered in writing to pay the defendant
bank $41,400 cash on account of the purported assessment
above mentioned levied against the stock enumerated.
Thereafter, the following letter was sent to each and every
stockholder of the bank:

"Perris, California, May 28, 1919.
"Dear Sir:

Please be advised that we have this day been offered full
payment of the amount assessed against your stock of this
corporation, a notice of which assessment was mailed to you
at your last known address, a copy of which offer is en-
closed. If you refuse or neglect to pay such assessment on
or before July 14, 1919, please be advised that such offer will
be accepted by the Board of Directors of this corporation.

Yours very truly,

BANK OF PERRIS,

By LOUIS VAIANI, SEC."

However, the aforementioned offer to purchase said stock
was not accepted at any time by the bank or by its board
of directors, and it was agreed later that the persons making
the offer would not purchase the stock of the bank, but that
the stock would be purchased by the persons named in a
resolution hereinafter referred to in the amounts and for
the sums set opposite their respective names. In order to
carry out said agreement, on July 15, 1919, the said two
directors of the bank, Vaiani and Casaretto, met at the office
of the bank and caused to be entered on the minutes of the
proceedings of the directors a resolution which purported
to cancel 249 shares of stock, including the 209 shares
owned by Moffere, and said resolution further declared said
stock to be null and void and purported to authorize the
vice-president of the bank to issue new certificates in the
amounts and to the persons named in said resolution.

It was alleged, upon information and belief, that, pur-
suant to the proceedings above recited, the bank, on July
15, 1919, purported to cancel the shares of stock mentioned
in said resolution, including the 209 shares owned by
Moffere, and issued new shares in lieu of the shares pur-
ported to have been canceled, to various persons and in
various amounts, and the defendants named in this action,

except the bank, are the persons to whom said shares of stock were issued, and each of said persons, prior to the time he paid for the stock so issued to him, knew that the two directors of the defendant bank were attempting to sell said stock pursuant to assessment proceedings and that each of said directors' meetings purported to have been held by them was held without notice to the third director, and that such meetings were not held on the date of the regular meeting of the board of directors, and each of said defendants knew that each of said meetings was held at a time and on a date other than the time provided by the by-laws for the regular meetings of said board, and each of said defendants knew that said meetings were not held pursuant to any call by the president of the bank nor pursuant to any call made in the manner provided by the by-laws of the bank. After the stock purported to have been canceled was issued to the various persons, the said defendants, with full knowledge of the facts set forth herein, acquired the remainder of the stock purported to have been canceled by said two directors of the bank, so that said defendants now claim to be the owners and holders of all the shares of stock of the bank.

Plaintiff alleges, upon information and belief, that the foregoing proceedings are the only proceedings held or performed or purported to be held or performed pursuant to which the said stock owned by said Moffere was canceled, or pursuant to which it was attempted to deprive said Moffere of his ownership thereof, and the foregoing proceedings are the basis of defendant's claim of their asserted right, title or interest in any of the stock of said bank.

It is alleged, upon information and belief, that ever since such purported cancellation of said stock owned by Moffere and the issuance of shares in lieu thereof to various persons, said bank has claimed that Moffere has not owned any of said stock subsequent to July 15, 1919, and that subsequent to that date he was not entitled to appear as a stockholder on its books, nor to exercise any of the rights of a stockholder therein, and that subsequent to the date last mentioned, said bank has treated the persons to whom shares of stock were issued by it in lieu of the shares owned by Moffere, and their purported successors in interest, as the owners of all said stock owned by Moffere, and such per-

sons claim to be the owners of all of the stock owned by Moffere.

It is then alleged that the sale and reissuance of stock as hereinbefore set forth are void and that none of the defendants claiming to own the same has any right, title or interest in the same.

The plaintiff commenced an action against Moffere on August 14, 1922, and a writ of attachment was issued therein and levied upon the shares of stock of the bank alleged to be the property of Moffere and to have been illegally canceled. Thereafter, plaintiff recovered judgment against Moffere in said action in the sum of $34,027.50 and an execution issued thereunder and was levied upon said stock alleged to have been owned by Moffere. Moffere's interest in said stock was sold under execution to plaintiff for the amount of his judgment. Plaintiff presented his certificate of sale to the bank and demanded the issuance of a stock certificate to him for 194 shares and the bank refused such demand. Plaintiff alleged, upon information and belief, that said stock is of the value of $160 a share, and prayed that the purported sale and cancellation by the bank of the certificates representing the stock of Moffere be declared null and void and that plaintiff be declared to be the legal owner of said stock.

Defendants demurred to the complaint upon the ground (1) that it did not state sufficient facts to constitute a cause of action; (2) that said action is barred by the provisions of subdivision 1 of section 341, Code of Civil Procedure, and by the provisions of section 347, Civil Code. The demurrer was sustained and judgment given for the defendants.

[1] Upon the question of the statute of limitations, appellants call to our attention the cases of *Herbert Kraft Co.* v. *Bank of Orland,* 133 Cal. 64 [65 Pac. 143], and *Cheney* v. *Canfield,* 158 Cal. 342 [32 L. R. A. (N. S.) 16, 111 Pac. 92]. Cases from other jurisdictions are also cited, but as the California cases relied upon seem to be decisive of this question in favor of the appellant, we shall not go further afield for authorities.

[2] There remains, then, to be decided the question of whether or not the complaint states a cause of action. The special meeting of the board of directors at which the purported assessment upon the stock was levied was not called

by the president, as required by the by-laws of the corporation; and was held without notice to one of the directors, who did not attend. Section 305, Civil Code, provides: "The corporate powers, business and property of all corporations formed under this title must be exercised, conducted and controlled by a board of not less than three directors, to be elected from among the holders of stock . . . " Section 308, Civil Code, provides: "A majority of the directors is a sufficient number to form a board for the transaction of business and every decision of a majority of the directors forming such board, *made when duly assembled,* is valid as a corporate act."

In 6 California Jurisprudence, page 1055, it is said: "It is the general rule, therefore, that a special meeting held without notice is void, and the directors present at such meeting cannot perform any valid corporate act. The provision that a majority of the whole number of trustees shall form a board for the transaction of business and every decision of a majority of the persons duly assembled as a board shall be valid, does not change the rule." (See, also, *Harding* v. *Vandewater,* 40 Cal. 77; *Thompson* v. *Williams,* 76 Cal. 155 [9 Am. St. Rep. 187, 18 Pac. 153]; *Smith* v. *Dorn,* 96 Cal. 82 [30 Pac. 1024]; *Beatty* v. *Rianda,* 34 Cal. App. 180 [167 Pac. 185]; *Raisch* v. *M. K. T. Oil Co.,* 7 Cal. App. 667 [95 Pac. 662]; *Curtin* v. *Salmon River etc.,* 130 Cal. 348 [80 Am. St. Rep. 132, 62 Pac. 552]; *Cheney* v. *Canfield,* 158 Cal. 345 [32 L. R. A. (N. S.) 16, 111 Pac. 92].) In the case last cited it was said: "It is the settled law that an assessment can be legally levied upon the capital stock of a corporation by the board of directors only at a regular meeting of the board or at a special meeting thereof, regularly called. [Citing cases.] As all proceedings whereby an assessment is levied upon the stock of a corporation and under which a forfeiture of the stock of the stockholders may be had are *in invitum,* it is elementary law that they must be strictly followed. The levy of such an assessment can only be accomplished legally by a strict compliance with the statutory provisions relative thereto, or with the provisions of the charter of the corporation upon the subject. [Citing cases.]"

It must follow that since the meeting of the directors was not regularly called, it was powerless to levy a legal assessment, and the assessment being void, no rights flowed from proceedings thereunder.

[3]   Respondent seeks to avoid the effect of the want of regularity in the directors' meeting by reliance upon section 133 of the Bank Act (Act 652, Gen. Laws of Calif., Deering [1923], p. 153). That section requires the directors of the bank to levy an assessment upon the stock to repair any deficiency in the capital which may be found by the bank superintendent. However, said act in no way changes the requirements for a valid directors' meeting, nor authorizes an administration of corporate affairs in any manner not prescribed in the corporate by-laws. [4]   It is certain that the directors might refuse to take the action called for by the bank superintendent, and this very contingency is provided for in the Bank Act itself (sec. 136), wherein the Superintendent of Banks is expressly authorized, in case of a refusal by the directors to levy such an assessment, to take possession of the bank and enforce the liability of stockholders and otherwise administer the affairs of the bank.

It seems obvious that when the two directors of the bank found themselves in a position where they could not secure a legal meeting of the directors to levy the assessment, they should have permitted the Superintendent of Banks to exercise his authority and raise the money required by the means provided in the Bank Act.

[5]   We reach this conclusion with great reluctance, because of the consideration due those who, in good faith, paid this assessment and performed a public service in rehabilitating an insolvent bank. In deference to their good faith and endeavor to remedy a most deplorable situation, we have striven for ways and means of affirming the judgment of the trial court; but we have reached the conclusion that this is one of the "hard" cases which, proverbially, make "bad" law, and that any attempt upon the part of courts to relax the safeguards placed by corporate by-laws about the actions of directors would open a Pandora's Box of business ills which would impair the usefulness of corporations. The law seems definite and clear and the practical policy behind it of the soundest.

The judgment must be reversed with directions to the trial court to require the defendants to answer. It is so ordered.

Nourse, J., and Sturtevant, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 20, 1925.

All the Justices concurred.