[Civ. No. 14247. Second Dist., Div. Two. Feb. 8, 1944.]

AMBER MORRISON, Appellant, v. J. D. WILLHOIT et al., Respondents.

William Ellis Lady and Francis H. Boland for Appellant.

Bauder, Veatch & W. I. Gilbert, Jr., for Respondents.

MOORE, P. J.—From a judgment denying relief to plaintiff in her action on two promissory notes, plaintiff appeals.* The execution of the notes was admitted, but after denying all other material allegations of the complaint, defendants pleaded affirmatively: (1) the notes were given in connection with a transaction whereby plaintiff on September 10, 1929, transferred certain properties for the benefit of the Marine Building and Loan Association of San Pedro, hereafter referred to as Marine, for the purpose of delaying and defrauding her creditors; (2) on September 15, 1933, plaintiff instituted an action in the Superior Court at Long Beach to cancel the notes and trust deeds given to Marine in the original transaction on the ground of fraud, which action was decided adversely to her; and (3) the institution of the action in Long Beach demanding the cancellation of the transfers of September, 1929, and the payment of the moneys she had placed with the defendants herein constituted an election of rescission as her remedy as well as a declaration that the notes here in suit were due and owing, and therefore the present action is barred by such election as well as by the statute of limitations.

In September, 1929, plaintiff owned a number of valuable properties in Los Angeles County. Prior to that time and for more than two years plaintiff had transacted business with Marine, and at that time maintained on deposit with that company in excess of $5,000. During the period prior to September, 1929, plaintiff sought the advice of Willhoit and Gibson, president and secretary respectively of Marine, with reference to her business transactions and the management of her properties. Such advice was given by defendants in the discharge of their duties as officers of Marine. In September, 1929, plaintiff was about to be made defendant in cer-

---

*The word plaintiff as used throughout this discussion will refer to Mrs. Weltha Reynolds, owner of the notes in suit, and not to the nominal plaintiff who is assignee solely for convenience. Although the defendants Gibson were not before the court, the references made to "defendants" throughout refer to Willhoit and Gibson as to all acts occurring prior to the filing of this action.

tain litigation in which she feared an adverse judgment. She sought the advice of defendants for the purpose of determining upon a method of protecting her property against sale under execution in the event that her adversary should prevail. An arrangement was agreed upon whereby plaintiff executed and delivered to Marine nine certain promissory notes aggregating $40,000, and to secure same she executed and delivered her several deeds of trust in favor of Marine as beneficiary. On the same day defendants, as officers of Marine, issued checks in the sum of $39,168.50, the difference evidently being the compensation of Marine for the services of Willhoit and Gibson. Those gentlemen caused plaintiff to indorse the checks which defendants promptly cashed. On the same day defendants executed their notes to plaintiff in the aggregate sum of $40,000 but gave no security. These notes were evidently given as contemporaneous proof of the possession of plaintiff's money by defendants, but no change in their relation of principal and agents was intended. Under the arrangement defendants deposited plaintiff's money with Marine in account No. 2300 under "Willhoit and Gibson" and used it to pay taxes and expenses of plaintiff. All sums withdrawn from this account were paid solely for the use and benefit of plaintiff.

About the 10th of March, 1931, defendants and their wives executed to plaintiff the two notes here in suit aggregating $31,625.59 as evidence of the balance of her money in the treasury of Marine. Aside from the execution of the notes nothing in the findings or in the evidence indicates that the parties intended thereby to evidence the personal debt of Willhoit and Gibson so long as they acted in good faith as plaintiff's agents in handling her money. On the 6th of June, 1933, the Building and Loan Commissioner of California, as receiver, took charge of Marine and thereafter administered its affairs. In her action filed in the Superior Court at Long Beach on September 15, 1933, plaintiff sought the cancellation of her nine notes to Marine of September 10, 1929, to the extent that the moneys evidenced thereby had not been expended for her account and for the cancellation of the deeds of trust given at the same time to secure such notes. The bases of her Long Beach action were: (1) that the litigation with which she had been threatened had been terminated and she was therefore entitled to have the balance of her money returned to her and the deeds of trust can-

celled; and (2) that she had been unduly persuaded by Willhoit and Gibson to execute such instruments.

In the Long Beach action plaintiff sued Marine, the receiver of Marine, and Willhoit and Gibson. Judgment of dismissal was rendered after the court had sustained a demurrer that the complaint failed to state a cause of action. The judgment was entered on March 27, 1934. Thereafter the receiver of Marine in the execution of his official duties foreclosed the trust deeds of September, 1929, and applied all the moneys in its treasury to the uses of Marine.

The present action was filed on July 19, 1941. The court found against plaintiff on all of her allegations, namely: defendants induced plaintiff to transfer her property to defendants; her property had been disposed of by defendants for their own use; defendants have neglected to pay any part of the notes; defendants had no intention of ever paying the notes but intended to dispose of the property for their own uses; the making of the original notes was a scheme to obtain the property of plaintiff fraudulently or otherwise without intending to pay the value or the amount evidenced by the promissory notes; the notes in suit had not been completely discharged; the properties were not conveyed to defendants at the instance and request of plaintiff; defendants had not dealt with the properties in the manner directed by plaintiff. It was also determined that it was not true that defendants failed to pay plaintiff the moneys evidenced by the original promissory note, or that they had no intention of paying the same, but because of the facts found, the notes in suit have been completely paid and discharged.

On the affirmative defenses it was found: (1) that the Long Beach action had resulted adversely to plaintiff in favor of defendant Willhoit and that such judgment constitutes res judicata of the present action; (2) that the Long Beach judgment disposed of all rights of plaintiff, including her right to declare the notes to be in default and the whole thereof to be due plaintiff, and that by reason whereof her action on the two notes is barred by subdivision 1 of section 337, Code of Civil Procedure; and (3) that, by virtue of filing the Long Beach action, plaintiff elected to pursue her remedy for cancellation of the notes and therefore she is now estopped, precluded and barred from recovering on them.

(1) The finding that the notes in suit have been dis-

charged spells finality for the action. The sufficiency of the evidence to support that finding is open to view. Plaintiff's declaration in her Long Beach action shows that she sought an arrangement with defendants whereby she might conceal her property from her anticipated creditor. Her first effort was to encumber her titles. To do this effectually she must obtain a consideration for such encumbrances. This she obtained from Marine, a loan of $40,000. She turned over the proceeds of that loan to Willhoit and Gibson, not for the purpose of lending them individually the money, but that they might conceal it from her creditors and carry it on Marine's books in their own names and disburse it for her uses as occasion might necessitate. They became her agents. She required of them no security; she collected from them no interest. After three and a half years had elapsed, on March 10, 1933, she agreed that they had properly expended all but $31,377.51 of the original fund. She then took from them the notes in this suit as evidence of the amount they still held for her. After the new notes were taken, according to the witness Willhoit they paid out $9,770.69 for her taxes and $12,991.69 for her personal use, leaving $8,615.13 in Marine's treasury. This much was clear and positive proof. Other testimony and documentary proof indicate a total of $38,000 had been paid out for plaintiff prior to the receivership of Marine. This would have left defendants in possession of only $1,168.50. Whether defendants had paid out for her use all of plaintiff's money but $8,615.13 or all but $1,168.50 the fact remains that any balance of her money was in the keeping of Marine as her debtor by her choice at the time when that corporation was taken over by the receiver. Such event gained for her no superior rights; no advantage over other creditors or depositors. Whatever money she had caused to be deposited in the treasury of Marine to be concealed from her creditors awaited the same fate as that of all other depositors of that company.

■ On appeal the evidence is not weighed but the court views the proof most favorable to respondent. (*California Employment Com.* v. *Betthesda Foundation,* 54 Cal.App.2d 348, 351 [128 P.2d 874].) ■ Since the findings are supported by substantial evidence they must be so construed as to uphold the judgment rather than defeat it. (24 Cal.Jur. 1009.)

■ The fact that the receiver in the exercise of his duty took possession of all the assets of Marine, including securities and

moneys on deposit, did not convert the gratuitous arrangement of its officers to do a service without pay into one whereby they should be personally responsible for all losses of their principal in the event of Marine's failure.

██ If plaintiff's appeal is based upon the theory that the agreement of September, 1929, is ambiguous, still the findings are sufficient. The only noticeable ambiguity is that arising from the testimony and contentions of plaintiff and from the execution of the notes in suit. If it be conceded to be ambiguous its meaning was to be determined by the trial judge upon the evidence. ██ Where the meaning of an ambiguous contract is to be determined by extrinsic evidence a question of fact is presented (17 C.J.S. 1284), and the finding thereon if not unreasonable will be upheld on appeal. (See *California Well Drilling Co.* v. *California Midway Oil Co.*, 178 Cal. 337, 343 [177 P. 849].) The agreement of defendants to protect against plaintiff's creditors the money received from her contemporaneously with her loan from Marine, as testified by Willhoit, was sufficient if believed to warrant a finding that the agreement was made to defraud plaintiff's anticipated creditor. And if there were no other evidence we could not say that the finding that the notes were discharged is without support.

██ (2) The record contains no substantial dispute of the contention that plaintiff's transfers of her properties on September 10, 1929, were executed to defraud a contingent creditor. She alleged that fact in her Long Beach complaint and Willhoit testified to the same at the trial below. Plaintiff argues in her brief that the question of transfer is not involved; that she loaned the $40,000 to defendants and took their notes for the amount they received from her. Such is a specious argument. It was only after she had encumbered her lands by trust deeds to Marine for a loan that she entrusted the proceeds of that loan to defendants as officials of Marine to secrete it from the world and to pay it out for her account. She was not only *in pari delicto;* she herself conceived the purpose of moral obliquity and invited Willhoit and Gibson to her home where she confided her fraudulent design to them and prevailed upon them to enter into a contract violative of good morals. The authorities cited by defendants (*Saint* v. *Saint,* 120 Cal.App. 15 [7 P.2d 374]; *Allstead* v. *Laumeister,* 16 Cal.App. 59 [116 P. 296]; *Withrow* v. *National Surety*

*Co.,* 122 Cal.App. 242 [10 P.2d 83] ; *Richman* v. *Bank of Perris,* 102 Cal.App. 71, 86 [282 P. 801] ) are in point. ▮ One who transfers his property for the purpose of cheating his creditors will plead in vain for relief from his own chosen distress. (*Saint* v. *Saint, supra,* at p. 22.) Even though it were unfair for a transferee under a fraudulent conveyance to keep the property as against the fraudulent grantor, still equity is so jealous of its principles that it turns away at its very threshold those who have been parties to wrongs. (*Withrow* v. *National Surety Co., supra,* at p. 242.) ▮ The burden is upon the complainant in equity to prove that, so far as the transaction involved in his demands is concerned, he is free from vice. Equity interposes a barrier against such an inequitable demand for the sake of the law itself, and upon ascertaining the fraudulent nature of the original transaction it will deny relief to a demand stemming from the original, tainted arrangement. (*Richman* v. *Bank of Perris, supra,* at p. 86.) ▮ By virtue of these principles the defendants herein invoked the equity side of the court for relief and it was properly granted. The notes in suit had their genesis in no place and arose out of no event other than the transfer of plaintiff's properties in 1929 for the purpose of defrauding a creditor. The fact that the complaint presents only a legal demand does not prevent the application of equitable principles. They were appropriately invoked by respondents.

▮ (3) The Long Beach action was a final adjudication of all the rights of plaintiff as against Mr. Willhoit. The inadequacy of her complaint then was apparent on its face. She sued to cancel all the notes and trust deeds she had executed to Marine in 1929 ''to the extent of any money not used or paid to and for the use and benefit of plaintiff.'' She had no dealings with Willhoit and Gibson other than those arising from the transfers to Marine. Consequently, when the Long Beach court adjudged that the action filed there did not state a cause of action and entered a judgment of dismissal, that was res judicata of all transactions necessarily arising out of such fraudulent transaction. In contending that the earlier lawsuit was not an adjudication on the merits plaintiff relies upon *Goddard* v. *Security Title Insurance & Guarantee Co.,* 14 Cal.2d 47 [92 P.2d 804], and *Campanella* v. *Campanella,* 204 Cal. 515 [269 P. 433]. These authorities do not support her contention. While the *Goddard* decision is readily distinguished on its facts, at the same time also it

contains the fundamental pronouncement (p. 52) that a judgment based upon an order sustaining a demurrer on *the ground* that an absolute defense is disclosed by the complaint may be deemed a judgment on the merits. In the Campanella case there were no findings in the first action, and the judgment roll did not disclose upon what grounds that action had been dismissed. In the course of its discussion the court declares that if a judgment of dismissal fails to show that the judgment was based upon a consideration of the merits of the controversy it is not res judicata; that a judgment of dismissal because of plaintiff's choice of the wrong forum or form of proceeding or defects of pleading is likewise unavailable as a bar to a subsequent suit. But those principles do not impair the vitality and force of the doctrine that an adjudication of the insufficiency of a complete statement of facts relied upon is res judicata and a subsequent suit based upon the same transaction will be barred.

Where the evidence used to establish a demand or a defense is identical with that used in a former action between the same parties, the doctrine of res judicata is clearly applicable. (*Hardy* v. *Hardy*, 97 Cal. 125 [31 P. 906].) A judgment upon the facts pleaded and confessed by demurrer is no less effectual as a bar to the subsequent action than a judgment based upon a verdict. (*See* v. *Joughin*, 18 Cal.2d 603, 606 [116 P.2d 777].) In presenting their defense to the action at bar respondents found it necessary to prove the identical fraudulent transaction which plaintiff had alleged in her Long Beach complaint. In the Long Beach action plaintiff sued Willhoit and Gibson as well as Marine. While that action against Marine alone might have resulted in a final judgment as to plaintiff's rights against Willhoit and Gibson, she left no doubt upon the subject by including those men as parties there.

The fact that Mrs. Willhoit was not a party to the former action is not sufficient to defeat the plea of res judicata. She received no consideration other than that received by her husband. Her signature was added to the note for no reason other than to evidence the good faith of Mr. Willhoit's promise to restore to plaintiff the residue of her money at the conclusion of his agency. The judgment of his nonliability under the allegations of the Long Beach complaint is likewise res judicata as to his co-promisor or guarantor of the repay-

ment of moneys claimed by virtue of the immoral transaction.

In view of the foregoing, a discussion of the other defenses would be excessive.

The judgment is affirmed.

McComb, J., concurred.

Wood (W. J.), J., took no part in the decision.

A petition for a rehearing was denied March 2, 1944, and appellant's petition for a hearing by the Supreme Court was denied April 6, 1944.